# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN L. WILLIAMS,<br><br>        Petitioner,<br><br>   v.<br><br>IVAN CLAY, Warden,<br><br>        Respondent. | 1:06-CV-0969 AWI JMD HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Tulare County Superior Court. On June 12, 2003, a jury found Petitioner guilty of attempted second degree robbery (Cal. Penal Code §§ 211, 664) and possession of marijuana for sale (Cal. Health & Safety Code § 11359). On September 17, 2003, the court sentenced Petitioner to eleven years four months in state prison. On June 13, 2005, the court amended its sentencing order and abstract of judgment to reflect a corrected total term of ten years four months in state prison. (Answer at 1-2.)

Petitioner appealed to the California Court of Appeal. On January 12, 2005, the court affirmed the conviction in a reasoned opinion. (Answer at 2; Lodged Docs. 4-6.) On February 10,

1  2005, Petitioner filed a motion requesting that the Court of Appeal vacate its January 12 opinion.  On
2  February 17, 2005, the court denied the motion to vacate.  (Answer at 2; Lodged Docs. 7-8.)
3       Petitioner then filed a petition for review in the California Supreme Court.  On April 20,
4  2005, the court denied review without prejudice to any relief to which Petitioner might be entitled
5  following resolution of certain cases then pending in the California Supreme Court.  (Answer at 2;
6  Lodged Docs. 9-10.)
7       On August 1, 2005, Petitioner filed a petition for writ of habeas corpus in the California
8  Court of Appeal.  On August 30, 2005, the court summarily denied the petition.  (Answer at 2;
9  Lodged Docs. 11-12.)
10      On September 19, 2005, Petitioner filed a petition for writ of habeas corpus in the California
11 Supreme Court.  On June 21, 2006, the court summarily denied the petition.  (Answer at 2; Lodged
12 Docs. 13-14.)
13      On July 21, 2006, Petitioner filed the instant petition in this Court.  The petition raises the
14 following three grounds for relief: 1) illegal detention and arrest violated Fourth Amendment; 2)
15 warrantless search and seizure violated Fourth Amendment; and 3) ineffective assistance of appellate
16 counsel.
17      On May 23, 2007, Respondent filed an answer to the petition.
18      On June 7, 2007, Petitioner filed a reply to the answer.

## FACTUAL BACKGROUND[1]

20      Angela Parish was working alone as a clerk at the Days Inn on December 9, 2003.  Shortly
21 after 8 p.m., a man came in with a gun.  He pointed the gun at her and asked for money.  Parish
22 started screaming.  Her boss, James Kumar, heard her from his apartment at the hotel and came out
23 of his apartment.  He saw a man pointing a pistol at Parish, who was kneeling on the floor.  The man
24 ran out of the building.  Kumar called the police.
25      Robert Clevenger was going to stay at the Days Inn.  He saw a man walk into the office, and
26 it looked like an armed robbery was taking place.  Clevenger watched and followed the man when he

---

[1] The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of January 12, 2005 and are presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1); Lodged Doc. 6.

ran out. The man got into the passenger side of a car. The car appeared to be taking off at the same time as the man was getting in. Clevenger was not able to see if there was a driver in the car. The car drove off with its lights off; the lights came on after the car turned onto the street.

Police officers arrived. Clevenger described the getaway vehicle to the officers. Officer Clay Moffet thought the description of the vehicle, an older Chevy four-door painted black with primer, and the description of the man involved matched a car and driver that he had issued a citation to within the last few months. He checked his citation book and found the citation. The driver of the vehicle was Petitioner, Melvin Williams. Officers went to the address listed on the citation. A woman answered the door and said that her former roommate, Angela Webb, is Petitioner's girlfriend. She had moved to a residence on Fulgham Street.

Officers found Webb's Fulgham address through a Department of Motor Vehicles search. Officers went to Webb's address around midnight and saw the car listed on the prior citation. Officers knocked on the door and rang the doorbell. They identified themselves as police officers. Although police detective Mark Lopez could hear dogs and movements inside the apartment, no one answered the door.

Angela Webb was inside the apartment asleep with Petitioner when the police knocked on the door. Also inside the apartment was Ramon Jamar. Webb jumped up but Petitioner held her back. Jamar told her to not answer the door. Officers eventually left. Petitioner and Jamar exchanged words, and Petitioner told Jamar he had to go.

In the early morning hours of December 10, Jamar went to the home of his girlfriend, Sophie Canales. Jamar told Canales that he had tried to rob a business earlier. He had held a gun to the victim's head but someone interrupted the robbery attempt and he fled. Canales called the police and Jamar was arrested.

Clevenger was taken to the apartment on the morning of December 10. He identified the car parked by the apartment as the vehicle he had seen leaving the Days Inn containing the person who had attempted to rob Parish.

Officers watched the apartment and spoke to Petitioner after he emerged from the apartment. The apartment was searched and officers found 18 baggies containing marijuana, as well as a scale

and marijuana residue. Also found inside the apartment was a notepad with the notation, "No camera. Open front window. Back room door. Only one person. Not a lot of traffic."

Parish identified Jamar from a lineup as the person who attempted to rob her.

Webb testified that Petitioner was her boyfriend. They lived together at the Fulgham apartment. Petitioner and Jamar were friends and Petitioner let Jamar stay at their apartment. Jamar does not have a car but Petitioner does. On December 8, 2001, Petitioner picked Webb up from work and they went home. Jamar was at the apartment that evening. Petitioner and Jamar walked back and forth in the apartment whispering. Webb thought they were talking about her birthday, which was two days away. Jamar and Petitioner were both wearing dark clothes and they left the apartment together at about 7:30 p.m. They were gone about one and a half hours. When they came home they were fidgety and acting weird. After the police left from outside the apartment in the early morning hours, Petitioner cursed and yelled at Jamar. He told Jamar it was really bad and that he (Jamar) had to go.

Webb did not ask Petitioner what was going on because she did not want to know. Petitioner told her what to say if the police questioned her. Petitioner also told her that he took Jamar to a hotel and Jamar tried to rob the clerk. Webb told him she did not want to hear anymore. The next morning Webb went to work. The police questioned her about 1:30 that day. She lied about Petitioner's activities to protect Petitioner. She saw Petitioner in jail and he told her he wanted her to stick to her story that he was in Fresno the evening of December 9, 2001. She eventually told the police the truth. Webb said she had never seen the marijuana in the apartment.

Defense

A police officer testified that Clevenger told him he was not certain which side of the car the robber got into when he was leaving the Days Inn. A private investigator for the defense testified that Clevenger said he was displeased with the information stated in the police reports and that he never positively identified the car he had seen the night of the attempted robbery.

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court

must look to the "holdings, as opposed to dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claims**

    **A.  Grounds One and Two**

Petitioner argues that his detention and arrest and the warrantless search of his residence violated the Fourth Amendment.

These claims were presented in an appeal to the California Court of Appeal, which affirmed the judgment in a reasoned opinion.  (Lodged Docs. 4-6.)  The issues were then raised in a petition for review in the California Supreme Court, which summarily denied review.  (Lodged Docs. 9-10.)  The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claims, the Court of Appeal found that the evidence showed that the detention was lawful, as officers had sufficient evidence to conclude that Petitioner was involved in criminal activity.  The court further found that the detention was not unreasonably prolonged or a de facto arrest and that Petitioner voluntarily gave consent for the search of his residence.  (Lodged Doc. 6 at 11-15.)

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 494 (1976).  This remains true regardless of a district court's view of the correctness of the state decision.  Abell v. Raines, 640 F.2d 1085, 1088 (9th Cir. 1981); see also Mack v. Cupp, 564 F.2d 898, 902 (9th Cir. 1977) ("[E]rror in a state appellate review of a fourth amendment claim does not necessarily justify habeas relief in a federal court.").

Here, prior to trial, Petitioner filed a motion to suppress evidence making the same Fourth Amendment arguments being made in this petition.  (Lodged Doc. 1 at 117-33.)  On March 3, 2003, the trial court held a suppression hearing in which it received evidence from police officers and from Petitioner.  (Lodged Doc. 17 at 1-73.)  The court denied the motion after stating on the record the reasons for doing so.  (Id. at 78-79.)  Petitioner then raised his claims in the California Court of Appeal, which denied the claims in a reasoned opinion after discussing the evidence presented at the

suppression hearing. (Lodged Doc. 4 at 33-64; Lodged Doc. 6 at 8-15.) Petitioner then raised his claims in the California Supreme Court, which summarily denied review. (Lodged Doc. 9 at 14-22; Lodged Doc. 10.)

Petitioner has not shown that the state failed to provide him a full and fair opportunity to litigate his Fourth Amendment claims. See Abell v. Raines, 640 F.2d 1085, 1088 (9th Cir. 1981) (finding that the state provided a full and fair opportunity to litigate Fourth Amendment claims where the claims were thoroughly briefed, considered, and rejected by the state trial and appellate courts). The claims are therefore denied.

**B.  Ground Three**

Petitioner argues that his appellate counsel was ineffective in failing to brief the issue of the trial court's failure to instruct the jury with CALJIC 3.18. Petitioner claims that the testimony of his alleged accomplice to the robbery, Ramon Jamar, and the testimony of his alleged accomplice to the marijuana possession charge, Angela Webb, should have been viewed with caution by the jury as they were being prosecuted for the same crimes as Petitioner. The instruction in question reads as follows:

> To the extent that an accomplice gives testimony that tends to incriminate the defendant, it should be viewed with caution. This does not mean, however, that you may arbitrarily disregard that testimony. You should give that testimony the weight you think it deserves after examining it with care and caution and in the light of all the evidence in this case.

CALJIC 3.18.

This claim was not presented to the California Court of Appeal, however, it was presented in an appeal to the California Supreme Court, which summarily denied review. (Lodged Docs. 4, 9-10.) The issue was then raised in petitions for writ of habeas corpus to the California Court of Appeal and California Supreme Court, which summarily denied the petitions. (Lodged Docs. 11-14.) When the state courts reach a decision on the merits but provide no reasoning to support their conclusion, we independently review the record to determine whether the state courts clearly erred in their application of Supreme Court law. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). However, although we independently review the record, we still defer to the state courts' ultimate

decision.  Id.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  See, e.g., Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986).  Therefore, a defendant must show that appellate counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, defendant would have prevailed on appeal.  Miller, 882 F.2d at 1434 & n.9; Birtle, 792 F.2d at 849.  However, appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Miller, 882 F.2d at 1434 n.10.  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  Miller, 882 F.2d at 1434.  As a result, appellate counsel will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason - because he declined to raise a weak issue.  Id.

The state courts did not clearly err in their application of Supreme Court law, as Petitioner has not shown a reasonable probability that he would have prevailed on appeal if counsel raised the asserted claim of instructional error.  The only testimony given by Mr. Jamar was obtained through the reading of a previous trial transcript.  In that testimony, Mr. Jamar admitted that he had attempted to rob the clerk at the Days Inn.  He did not implicate Petitioner in the robbery.  (Lodged Doc. 17 at 234-36.)  It is unlikely, therefore, that instructing the jury with CALJIC 3.18 would have affected the verdict as there was no testimony tending to incriminate Petitioner that the jury could have properly viewed with caution.  Further, even if the jury had viewed Mr. Jamar's own admission with caution, it was unlikely to affect the verdict as his testimony was corroborated by the statements of the hotel clerk and Jamar's girlfriend.  (Lodged Doc. 17 at 123-25; Lodged Doc. 18 at 308-09.)

Similarly, Petitioner has not shown that instructing the jury to view the testimony of Angela Webb with caution would have affected the verdict on the possession of marijuana for sale charge.  Ms. Webb testified that Petitioner had never told her that he was aware that the marijuana in question

was in the residence. (Lodged Doc. 18 at 304.) She also testified that Petitioner had never sold marijuana and that the room where it was found belonged to Mr. Jamar. (Lodged Doc. 18 at 272, 299, 304.) Ms. Webb did not give testimony tending to incriminate Petitioner in relation to the marijuana possession charge that could have been undermined by instructing the jury to view her testimony with caution. As to Ms. Webb's testimony regarding the robbery, Petitioner has not shown that appellate counsel was deficient in failing to argue instructional error, as CALJIC 3.18 is only appropriate for testimony given by one who is "liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." Cal. Penal Code § 1111; see CALJIC 3.10. Here, Ms. Webb was not liable to prosecution for the robbery so an instruction to view her testimony regarding the robbery with caution would have been improper.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     August 19, 2008                    /s/ John M. Dixon**

1                                              <u>UNITED STATES MAGISTRATE JUDGE</u>

U.S. District Court
E. D. California    Jp                      11